**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 25-2029

UNITED STATES OF AMERICA

v.

COMPREHENSIVE HEALTHCARE MANAGEMENT SERVICES LLC,
doing business as
BRIGHTON REHABILTATION AND
WELLNESS CENTER,
Appellant

No. 25-2030

UNITED STATES OF AMERICA

v.

MT. LEBANON OPERATIONS LLC,
doing business as
MOUNT LEBANON REHABILIATION
AND WELLNESS CENTER,
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 2:21-cr-00079-006 & 2:21-cr-00079-007)
U.S. District Judge: Honorable Robert J. Colville

Submitted Under Third Circuit L.A.R. 34.1(a)
July 1, 2026
_____

Before: SHWARTZ, PHIPPS, and McKEE, Circuit Judges.

(Filed: July 7, 2026)

---

OPINION[*]

---

SHWARTZ, Circuit Judge.

Comprehensive Healthcare Management Services LLC ("Brighton") and Mt. Lebanon Operations LLC ("Mt. Lebanon") appeal their convictions and restitution orders. For the following reasons, we will affirm.

I

The Pennsylvania Department of Health ("DOH") conducts surveys at nursing care facilities on behalf of the federal Centers for Medicare and Medicaid Services ("CMS") to determine if Medicare and Medicaid recipients are adhering to federal regulatory requirements. Generally, if a survey reveals a violation of a federal regulation, and the facility "fail[s]" to comply with that regulation "within 180 days . . . of the survey, [it] . . . may no longer participate in Medicare and Medicaid." App. 495. In addition, DOH may also (1) bar the facility from admitting new patients, or (2) revoke a facility's license, which would render a facility unable to participate in Medicare or Medicaid.[1]

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] If DOH learned that a facility deceived it in connection with one of these surveys, such as by intentionally falsifying staffing hours, imposition of these sanctions would be more likely.

2

Under a federal regulation, nursing care facilities "must have sufficient nursing staff . . . to provide nursing and related services." App. 508; 42 C.F.R. § 483.35. DOH's surveys seek to capture staffing levels through, among other things, a Patients Per Day ("PPD") calculation, which measures time spent providing direct patient care. Pennsylvania law imposes a mandatory PPD. 28 Pa. Code § 211.12(i).

Appellants are nursing homes who participate in Medicare and Medicaid and who were charged with falsifying material facts in connection with delivery of and payment for health care benefits in violation of 18 U.S.C. §§ 1035(a)(1) and 2 and obstructing the investigation and proper administration of a matter within the jurisdiction of CMS in violation of 18 U.S.C. §§ 1519 and 2.[2] Appellants allegedly submitted falsified documents as part of the surveys that overstated the time nurses spent providing patient care to ensure Appellants continued to receive Medicaid and Medicare funding. A jury convicted the Appellants and the District Court denied Appellants' motions for acquittal and for a new trial. United States v. Gilbert, No. CR 21-79-RJC, 2024 WL 2816554, at *1 (W.D. Pa. June 3, 2024). At sentencing, the District Court imposed probation on each Appellant and ordered restitution totaling $15,350,569.56.[3]

---

[2] Individual employees were charged and acquitted.
[3] Brighton was sentenced to five years of probation and ordered to pay $12,629,257.46 in restitution. Mt. Lebanon was sentenced to one year of probation and ordered to pay $2,721,312.10 in restitution.

Appellants appeal.

## II[4]

Appellants contend that (1) the District Court incorrectly instructed the jury on materiality under 18 U.S.C. § 1035(a)(1), (2) the evidence was insufficient to support the verdict, and (3) the District Court erred by imposing restitution in the amounts it did. Each challenge lacks merit.

## A[5]

The District Court correctly instructed the jury on materiality under § 1035(a)(1). To be convicted under § 1035(a)(1), a defendant must, in a "matter involving a health care benefit program, knowingly and willfully . . . falsif[y], conceal[], or cover[] up by any trick, scheme, or device a material fact . . . in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1035(a). "A fact is 'material' if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" United States v.

---

[4] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[5] "We review the District Court's ruling on any contemporaneous objections for abuse of discretion." United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003). We review a preserved challenge to a jury instruction's "statement of the legal standard" de novo. United States v. Valentin, 118 F.4th 579, 586 n.11 (3d Cir. 2024) (quoting United States v. Urban, 404 F.3d 754, 779 (3d Cir. 2005)). "Any non-contemporaneous objections," including to jury instructions, "are subject to plain error review." Brennan, 326 F.3d at 182; see United States v. Hughes, 117 F.4th 104, 107 (3d Cir. 2024); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). Appellants' challenges to the jury instruction fail under any of these standards.

McLaughlin, 386 F.3d 547, 553 (3d Cir. 2004) (alteration in original) (quoting United

States v. Gaudin, 515 U.S. 506, 509 (1995)). That decision-making body need not

actually rely on the statement for it to be material. Id. at 554. Rather, "a statement is

material if it is capable of influencing a particular decision of the agency in question."

United States v. McBane, 433 F.3d 344, 350 (3d Cir. 2005).[6]

> Here, the jury was instructed that

> [a] false statement is material if it has a natural tendency to influence or is capable of influencing the decision of the decision-making body to which it was addressed. The statement need not actually be relied on by the decision-making body, but need only be of a type that one would normally predict would influence the given decision-making body.

App. 1711. Appellants challenge this instruction for failing to indicate that the

falsehoods must have influenced a decision affecting Medicare or Medicaid payments,

---

[6] Section 1035 "does not . . . precisely describe to what or to whom the statements must be material." United States v. Natale, 719 F.3d 719, 735 (7th Cir. 2013) (emphases omitted). The Court of Appeals for the Seventh Circuit concluded that false statements under § 1035 must be material to a health care benefit program. Id. at 737. In that case, the jury had been instructed only that a statement was material if it "had the effect of influencing the action of a person or entity or was capable of or had the potential to do so." Id. at 732 n.4. The court held that the failure to instruct that the statements had to be material to a health care benefit program was harmless error because the Government had (1) "told the jury that the false statements must 'have the effect of influencing the action of Medicare or [were] capable of or had the potential to do so'" in its closing argument, and (2) "presented proof . . . that the false statements . . . were material to Medicare." Id. at 738 (alteration in original). It made no difference that Medicare had not actually audited the defendant or seen the report containing the alleged false statements. Id. Because Medicare sometimes requested that type of report when conducting audits, the false statements had "a potentiality of influencing the decisionmaker." Id. Even if the jury here should have been told that the statements had to be material to a health care program, the absence of such an instruction given the evidence introduced would have been similarly harmless.

but the instruction is entirely consistent with our law on materiality even though it does not specify the decision the statement was capable of influencing.[7] See McBane, 433 F.3d at 350; McLaughlin, 386 F.3d at 553. Thus, the instruction was correct.

## B[8]

The District Court also correctly concluded that the evidence was sufficient to support Appellants' convictions.[9]

### 1

To secure a conviction under § 1035(a)(1), the Government must prove a defendant (1) "in any matter involving a health care benefit program," (2) "knowingly and willfully," (3) "falsifie[d], conceal[ed], or cover[ed] up by any trick, scheme, or device a material fact," (4) "in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1035(a).

---

[7] The jury was also properly instructed that, to find Appellants guilty under § 1035, it must conclude that the false statements were made in a matter involving a health care benefit program that "affected or could have affected interstate commerce." App. 1711.

[8] "We review a sufficiency challenge de novo," viewing "the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt." United States v. Hendrickson, 949 F.3d 95, 97 n.2 (3d Cir. 2020) (citations, alteration, and quotation marks omitted).

[9] Appellants' sufficiency arguments appear primarily copied and pasted from their District Court briefs. A "copy-and-paste appeal" that does not "bother[] to explain what the District Court did wrong" is "not proper appellate advocacy," and "the lack of appellate argument reflects the correctness of the District Court's" judgment. Conboy v. U.S. Small Bus. Admin., 992 F.3d 153, 157-58 (3d Cir. 2021).

Appellants argue that the evidence was insufficient to support (1) willfulness, (2) materiality, and (3) that the alleged false statements were made in connection with the delivery of or payment for health care benefits. None of these arguments has merit.

a

A defendant acts willfully if he "act[s] with knowledge that his conduct was unlawful." Bryan v. United States, 524 U.S. 184, 193 (1998). The evidence showed that Appellants or their agents knew that they were unlawfully falsifying records. As to Brighton, the jury heard testimony that (1) employees were asked, by among others, the director of nursing, to record employee names on staffing sheets on days that they did not work to boost Brighton's PPD, (2) an administrative assistant perceived this request as wrong, and (3) the CEO responded to an employee's concern about the false statements by saying, "I didn't hear you say that," App. 1254.[10] As to Mt. Lebanon, the jury heard testimony that nurses were instructed to remain clocked although they were not working so that Mt. Lebanon could meet staffing requirements, and that staffing sheets overreported the hours employees provided direct patient care. Mt. Lebanon's director of nursing testified that this request "didn't seem right." App. 1099. The jury also saw the facility administrator's email transmitting an employee's resignation letter which stated

---

[10] The Appellants are incorrect that Brighton employees' mental states cannot be imputed onto Brighton because they did not seek to benefit Brighton because the evidence showed, among other things, that the director of nursing told an administrative assistant to falsify the staffing sheets because Brighton was fined and had to stop admissions. That testimony shows that those employees acted to protect Brighton from consequences of understaffing.

7

that Mount Lebanon "ha[d] illegally used hours to meet PPD." Supp. App. 720.[11] Viewed in the light most favorable to the Government, this evidence is sufficient to support the jury's finding that Appellants knew their conduct was unlawful and therefore acted willfully.

b

The evidence was also sufficient to support the jury's finding of materiality. Again, to be material, a false statement must "ha[ve] 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" McLaughlin, 386 F.3d at 553 (quoting Gaudin, 515 U.S. at 509).

The evidence showed that false statements were made to DOH, a decision-making body operating in both state and federal capacities, and were capable of influencing its decisions, including whether a facility had sufficient nursing staff to receive Medicare and Medicaid funding. More specifically, the evidence showed that (1) DOH relies on staffing information to determine compliance with federal regulations, (2) continued violation of a federal regulation would render a facility unable to participate in Medicare and Medicaid, (3) continued state violations could lead to sanctions that would be shared with CMS and limit a facility's ability to participate in Medicare and Medicaid, (4) intentional falsification of staffing records would make DOH more likely to impose

---

[11] Although one employee testified that inflated the hours resulted in him being paid for time he did not work, a jury could reasonably conclude from that evidence that he acted at least in part to protect Mt. Lebanon from negative consequences from understaffing appearing on DOH surveys.

sanctions, and (5) DOH could not determine whether Appellants complied with federal regulations if names on staffing records were falsified. Thus, falsifications on staffing sheets submitted to DOH had the potential to influence both DOH's determination whether Appellants were complying with federal regulations and its decision whether to sanction Appellants for state violations, both of which could have affected their continued receipt of Medicare and Medicaid funds. This evidence is sufficient to support the jury's finding that Appellants' false statements were material to DOH's decision-making.[12]

c

The evidence also supports the jury's finding that Appellants falsified statements in connection with the delivery of or payment for health care benefits. In the § 1035 context, in connection with is construed broadly. See Mont v. United States, 587 U.S.

---

[12] Appellants argue that, because DOH operated in both federal and state capacities, "any alleged falsehood made to DOH . . . would be material only if it had the tendency to affect Medicare and Medicaid payments, i.e., that it relates to DOH's 'federal hat.'" Appellant Br. at 21 (citing Natale, 719 F.3d at 737). While the Court of Appeals for the Seventh Circuit has concluded that under § 1035, the false statements must be "material to a health care benefit program rather than to any person or entity," Natale, 719 F.3d at 735, 737 ("A proper instruction on the materiality element in § 1035 would require that false statements ha[ve] a natural tendency to influence, or [are] capable of influencing, the decision of' the health care benefit program." (alteration in original and quotation marks and citation omitted)), neither the statute's text nor our precedent imposes such a specific requirement. In any event, because the evidence here showed that the falsehoods had the potential to affect Medicare and Medicaid payments, they would be material even under Natale. See id. at 738 (concluding statements were material because they could have appeared in an audit and affected a Medicare determination).

9

514, 521-22 (2019). Medicare and Medicaid have staffing requirements for nurses who provide direct health care to nursing home residents. 42 C.F.R. § 483.35. If those requirements are met, those programs pay for those services. Appellants falsified their records of nursing staffing levels to avoid bans on admissions or other penalties that could have affected their continued receipt of Medicare and Medicaid payments. The jury therefore reasonably concluded that the false statements were made in connection with the delivery of or payment for health care benefits.

2

To secure a conviction under § 1519, the Government must prove, as relevant here, that a defendant (1) "knowingly," (2) "conceal[ed], cover[ed] up, falsifie[d], or ma[de] a false entry in any record, document, or tangible object," (3) "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1519. "[A] defendant need not intend to obstruct or impede a specific federal investigation; the government must prove only that (1) a defendant intended to impede the investigation of 'any matter' and (2) the matter at issue was ultimately proven to be within the federal government's jurisdiction." United States v. Moyer, 674 F.3d 192, 210 (3d Cir. 2012). There was sufficient evidence to prove both elements.[13]

_____

[13] Appellants' claim that their misstatements were not material to a federal matter or investigation is irrelevant because "materiality is not an express element of § 1519." United States v. Moyer, 674 F.3d 192, 207-08 (3d Cir. 2012). In any event, Appellants' falsifications of staffing records in DOH surveys were material because, as discussed

10

a

First, the DOH surveys and the falsified staffing sheets Appellants submitted during those surveys are federal investigations or matters under § 1519. The jury heard testimony that DOH conducts surveys "on behalf of [CMS]," to determine whether recipients of CMS funds are complying with the federal requirement to provide sufficient nursing staff. App. 484. Thus, the evidence showed that the DOH surveys, including DOH's evaluation of a facility's staffing levels, are an investigation or matter within the jurisdiction of CMS, a United States agency. See Moyer, 674 F.3d at 210.

b

The evidence also showed that Appellants acted knowingly and with intent to impede the DOH surveys. Relevant here, the surveys are meant to capture the hours employees provided direct patient care, and employees were instructed to falsify records to enable Appellants to meet PPD requirements and avoid fines and other sanctions. This is sufficient to prove that Appellants knowingly falsified documents in a matter, which here is a health care program within the jurisdiction of a federal agency. See Moyer, 674 F.3d at 211.[14]

---

above, they were capable of influencing DOH's determination whether Appellants complied with state and federal regulations.

[14] Section 1519 does not require the Government to prove that Appellants should have foreseen that their conduct would affect a federal agency. Moyer, 674 F.3d at 208.

11

C[15]

Appellants argue that no restitution was warranted because CMS suffered no economic harm.[16] To set aside the award, Appellants must show it is "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." United States v. Fallon, 61 F.4th 95, 125 (3d Cir. 2023) (quoting United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007), as amended (Aug. 10, 2007)). Appellants have not done so.

The evidence showed that repeated staffing shortages could have led to thirty-day admissions bans following each survey in which false records were submitted, and the loss amounts the Government identified reflected the federal payments that Appellants would not have received if such bans had been imposed. Thus, the restitution award has a credible evidentiary basis in the record.

III

For the foregoing reasons, we will affirm.

---

[15] "We review the legality of a restitution order de novo and review specific awards for abuse of discretion." United States v. Cammarata, 145 F.4th 345, 371 n.25 (3d Cir. 2025) (citation and quotation marks omitted). "We review factual findings as to the amount of loss for clear error." United States v. Fallon, 61 F.4th 95, 125 (3d Cir. 2023).

[16] The Mandatory Victims Restitution Act applies to this case, see 18 U.S.C. § 3663A(c)(1)(A)(ii) (requiring restitution to victims of "any offense committed by fraud or deceit"); Cammarata, 145 F.4th at 370-71, and requires that restitution be ordered "in the full amount of each victim's losses as determined by the court," 18 U.S.C. §§ 3663A(d), 3664(f)(1)(A).